(93 South. 748)

No. 24305.

KENTWOOD BANK v. McCLENDON et al.

(June 27, 1922. Rehearing Denied by Whole Court Oct. 19, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Judgment** ⬤⟿841—Not illegal for creditor to transfer judgment to attorney or for one purchasing the judgment at execution sale to join in the transfer.

Where a judgment creditor's attorney had a claim of 20 per cent. of the amount of the judgment, it was not illegal, unfair, or prejudicial to the judgment debtor for the creditor to transfer the judgment to the attorney, nor for one who had purchased the judgment under an execution against the judgment creditor to join in the transfer upon the attorney's promise to pay him out of the proceeds.

2. **Judgment** ⬤⟿517—Matter set up in suit was concluded by judgment, and could not again be urged in suit to enjoin execution.

Where, in a suit against plaintiff for a shortage on a sale of land, it attempted to prove that in selling the land it was acting for another, but it was held that this could not be proved by parol evidence, this question was concluded by the judgment against plaintiff, and could not be again raised in a suit by it to enjoin execution on the judgment, especially as against a purchaser of the judgment for a valuable consideration.

3. **Judgment** ⬤⟿883(1)—Purchase under execution on another judgment did not extinguish both judgments, but made purchaser the judgment creditor.

Where a judgment recovered by P. was sold under an execution against P. in favor of M., the two judgments were not thereby extinguished to the full extent of the judgment so purchased, but M. merely became the judgment creditor instead of P.

4. **Judgment** ⬤⟿883(1)—Vendor held bound to make good to purchaser anything he is required by judgment to pay his vendee for shortage in acreage.

Where plaintiff conveyed land to P., and transferred the purchase money notes to M., and P. thereafter recovered judgment against plaintiff for a shortage in acreage, if, as claimed, plaintiff orally sold the land to M. who orally sold to P., plaintiff was bound to make good to M. any amount he would have to pay P. on account of the shortage, and could not, while retaining the entire price received from M., require him to make good the shortage by compensating the notes or judgment into which they were merged with the judgment for the shortage.

5. **Estoppel** ⬤⟿3(3)—Plea held not to estop defendant and his assignee from denying that another was real vendor of land conveyed by plaintiff.

Where plaintiff conveyed land to P. and transferred the purchase money notes to M., who it claimed orally purchased the land from it, and resold it to P., and P. thereafter sued to rescind, or in the alternative for a diminution of price because of a shortage, and M. sued P. on the notes, P.'s plea in the latter suit that the validity of the notes were then in issue in his suit against plaintiff did not estop P. and his assignee from denying that M. was his real vendor, and the party liable for the shortage.

6. **Estoppel** ⬤⟿3(1)—Unsuccessful allegations not ground for estoppel.

Judicial allegations of fact pleaded unsuccessfully cannot be made the ground for estoppel, especially where the party urging the estoppel has not been forced into a disadvantageous position.

**7. Injunction ⬱186(1) — Statutory damages are punitory, and will not be awarded in absence of palpable abuse of writ.**

The injunction damages provided for by Code Prac. art. 304, are punitory in character, and will not be granted where there is no such palpable abuse of the writ as to warrant the imposition of the penalty.

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; W. S. Rownd, Judge.

Suit by the Kentwood Bank against William H. McClendon and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Purser & Magruder, of Amite, for appellant.

Reid & Reid, of Amite, for appellees.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

THOMPSON, J. On June 5, 1913, the Kentwood Bank sold to E. S. Pike 600 acres of land situated in the parish of St. Helena. The deed recited that the sale was made and accepted for a valid and valuable consideration, "heretofore paid and delivered to the vendor and the further price and sum of $2,700, payable in nine equal annual installments, dating from April 18, 1913, for which Pike executed his nine promissory notes to his own order and indorsed in blank." The act of sale provided that, on default of the payment of any one of the notes at maturity, all of the other notes should become due and payable. It appears from the petition that one C. H. McNie had a verbal agreement to purchase the land from the bank, and that he in turn had verbally agreed to sell to Pike, but the deed was made by the bank to Pike. The notes given by Pike were turned over to McNie. The Amite Bank & Trust Company, having become holder of one of the notes of Pike, obtained a judgment against him, and caused the land to be seized and sold. At this sale (February 10, 1917) W. C. Hanson, who is said to be a kinsman of McNie, became purchaser of the 600 acres at the price of $300. Hanson subsequently sold the land to McNie for $1,400. Prior to the judicial sale to Hanson, Pike brought suit against his vendor, the Kentwood Bank, to have the sale to him rescinded on the ground of fraud and misrepresentation, and, in the alternative, for a reduction or diminution of the price by reason of a shortage in the acreage. The demand for rescission was rejected in the trial court, but Pike was given a judgment against the bank for $1,625 on account of the acreage shortage. This judgment was signed on the same day as that of the Amite Bank v. Pike. On appeal the Supreme Court on December 1, 1919, affirmed the judgment of Pike v. Bank. See 146 La. 704, 83 South. 904.

Pending the suit of Pike v. Bank in the Supreme Court, McNie filed suit against Pike on the eight notes, aggregating $2,400. In this suit Pike filed a plea of lis pendens, predicated on the fact that the validity of the notes sued on was in contest and at issue in the suit pending in the Supreme Court wherein Pike was demanding the return to him and the cancellation of the said notes. The plea was overruled, and no further defense was made by Pike, and judgment was rendered against him on the notes. Execution was issued on the judgment, and the judgment of Pike v. Bank was seized and sold by the sheriff to McNie for the sum of $25. The seizure and sale having been made in the parish (Tangipahoa) where the seized judgment was rendered, and the judgment debtor being a resident, at the time, of St. Helena parish, and no notice of seizure having been served on the seized debtor, on advice of counsel, McNie declined to accept the sale to him of the judgment, and no deed was executed by the sheriff.

On May 1, 1920, W. H. McClendon, who

had represented Pike in his suit against the Kentwood Bank, obtained from Pike a transfer and assignment of the judgment against the bank. He had previously notified the bank of his claim in said judgment of 20 per cent. as attorney fees. Thereafter an agreement was had between Mr. McClendon and Messrs. Reid and Reid, attorneys for McNie, by which McNie quitclaimed to McClendon whatever title he (McNie) may have acquired in the judgment of Pike v. Bank at the sheriff's sale, in consideration of which McClendon agreed to pay McNie $1,250, out of the proceeds obtained by execution, compromise, or settlement that might be made by him with the bank. To secure the payment of said amount McClendon deposited with Reid & Reid, McNie's attorneys, Liberty Bonds to the amount of $1,500. Execution was caused to be issued on the judgment against the bank, and the property of the bank· was seized. The present suit followed, and is against McClendon and Pike. An injunction was obtained, and the seizure and sale was arrested. On a trial the injunction was dissolved, and the plaintiff's demand rejected, and the plaintiff was condemned to pay defendants $250 as attorney fees for dissolving the writ. The plaintiff has appealed, and the defendants have answered praying for 20 per cent. statutory damages and for 10 per cent. for frivolous appeal.

Plaintiff's petition is quite lengthy, comprising some 61 paragraphs. The résumé of the facts which we have given covers substantially the matters set out in the petition, and which constitute the basis of the injunction.

[1] Plaintiff makes no attack on the validity of the judgment in favor of Pike, nor on that of McNie against Pike. And we may say at the outset that the charge that the transfer of the judgment by Pike to McClendon and the agreement between McClendon and the attorneys of McNie were pure simulations, and were conceived and executed with a view of defrauding the bank, or of obtaining an unfair advantage over the bank, is not supported by any evidence in the record. Mr. McClendon held a legal claim of 20 per cent. against, or in, the judgment of Pike against the bank, and McNie held a judgment against Pike. It was not illegal, unfair, nor prejudicial to the interest of the bank for Pike to transfer the judgment to Mr. McClendon, nor for McNie to join in said transfer, by means of which he could get a partial settlement of his judgment against Pike. The transfer to McClendon was made for a valid and legal consideration. Moreover, we fail to see what interest the bank has in attacking the sale to McClendon, so long as the judgment has not been paid or otherwise extinguished.

[2] The gravamen of plaintiff's complaint is that, in making the sale of the land to Pike, the bank was acting solely for McNie, and that in equity, morals, and good conscience McNie was in reality the vendor of Pike, and that when Pike obtained a final judgment against the bank the said judgment became immediately extinguished by compensation with the judgment· which McNie had obtained against Pike. It is sufficient answer to say that, in the suit of Pike v. Bank, the bank attempted to prove that, while the act of sale was in the name of the bank, it (the bank) was acting for McNie, and this, it was held by the Supreme Court, could not be done by parol evidence. If the defense there made, that the claim for reduction of price was due by McNie, and not by the bank, could not avail the bank to prevent judgment against it, we are unable to discover by what process of reasoning it can now be said that on the same state of facts the judgment when rendered became extinguished by compensation. That question, as between the bank and Pike, was closed by the judgment, and McNie is not a

party to this suit. If the matter cannot be urged again against Pike, certainly it cannot be opposed to McClendon, who purchased the judgment for a valuable consideration.

[3, 4] It is further contended that, when McNie purchased the judgment of Pike v. Bank at the judicial sale in execution of his judgment against Pike, the two judgments became extinguished to the full extent of the judgment so purchased. We have been unable to find any rule of law or jurisprudence to sustain such a proposition, and we are quite sure that none can be found. When McNie became the owner of the judgment against the bank (if, in fact, he became such owner), he at once became the judgment creditor of the bank, instead of Pike, and he could in no sense, by such purchase, be said to have become the judgment debtor of Pike. There is no evidence whatever in the record showing the consideration which passed between the bank and McNie in the original transaction by which the bank claims to have sold the land to McNie. It is stated in brief of plaintiff's counsel that the bank received $2,250 from McNie. If the bank had sold the land to McNie, and McNie had sold to Pike, as it is claimed, the bank would still have been bound to make good to McNie whatever amount McNie would have had to pay back to Pike on account of the shortage in acreage. If the notes received by McNie in the sale to Pike represented an advance in the price over what McNie paid the bank, the bank could not legally or equitably require McNie to make good to Pike the shortage in acreage by compensating the notes or the judgment into which they were merged, with the judgment Pike had obtained, and hold itself the entire price received from McNie. Further than this, McNie has not been made a party to this suit. So far as the record shows, he is still the owner of the judgment against Pike for $2,400, and we cannot conceive how the court can decree that that judgment has been compensated to the extent of the Pike judgment against the bank.

[5, 6] It is further urged that Pike and his assignee, McClendon, are estopped from denying that McNie was the real vendor of Pike and the actual judgment debtor of Pike, by reason of the allegations in the plea of lis pendens filed in the suit of McNie v. Pike.

Counsel are in error in stating that the plea referred to alleged that McNie and the bank were one and the same entity. The plea merely set forth that the validity of the notes sued on were at issue in the suit of Pike v. Bank then pending in the Supreme Court, wherein the sale was sought to be set aside and the notes returned to Pike. The statement on which counsel bases the claim of estoppel was contained in a brief or list of authorities furnished the district judge by counsel for Pike. It is a well-settled rule that judicial allegations of fact, which are pleaded unsuccessfully, cannot be made the grounds for estoppel, and especially is this true where the party urging the estoppel has not been forced into a disadvantageous position.

[7] With the exception of the claim for attorney fees incurred for services in dissolving the injunction, on which the judge below allowed $250, the record discloses no special damages on account of the injunction. The claim is made for 20 per cent. damages provided for in article 304, Code of Practice. Such damages are punitory in character, and we do not find such palpable abuse of the writ as to warrant the imposition of the penalty. Nor can the appeal be said to be frivolous in the sense that would justify the allowance of damages as for a frivolous appeal.

The judgment appealed from is affirmed.

Rehearing refused by the WHOLE COURT.